# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                                        Crim Case No. 23-20390

v.                                                  Hon. Mark A. Goldsmith

JANEVONNE HUBBARD,

        Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM REGARDING SUPERVISED RELEASE VIOLATION

Defendant Janevonne Hubbard defrauded the Social Security Administration (SSA) by stealing more than $200,000.00 in Social Security benefits intended for her deceased mother over the course of a decade. Hubbard pleaded guilty to one count of Theft of Government Funds, in violation of 18 U.S.C. § 641. At sentencing, the Court varied downward to sentence her to one day, time served, to be followed by a two-year term of supervised release, with the first eight months to be served at a Residential Reentry Center (RRC). (ECF No. 25.)

Hubbard took the Court's leniency for granted and breached the Court's trust. She forged her name onto an automobile insurance policy document and then presented that falsified document to the RRC in order to be able to park her

1

car on site. As a result, the RRC deemed Hubbard a program failure and directed her to leave the premises. This is a violation of Hubbard's terms of supervised release. Hubbard admitted responsibility for this violation to the Court at a hearing on December 2, 2024.

For the reasons stated below, the Government recommends that the Court revoke Hubbard's supervised release and impose a sentence of incarceration at or near the midpoint of the guideline range.

**I.     Background**

The United States adopts the description of the violation conduct detailed by the Probation Department in Part 1 of the Violation Report dated October 29, 2024. (ECF No. 27.)

**II.    Calculation of Advisory Sentencing Guidelines**

The Probation Department has assessed Defendant Hubbard's supervised release violation as a Grade C Violation and calculated the guideline range applicable upon revocation to be 3 to 9 months based on Hubbard's Criminal History Category of I. (Violation Report, Part 2.) The Government agrees with the Probation Department's assessment and accepts the guidelines calculated by the Probation Department as correct.

**III.   Applicable Law and Analysis**

Under 18 U.S.C. § 3583, "[t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--"

(1) terminate a term of supervised release after the expiration of one year of supervised release;

(2) extend a term and modify, reduce, or enlarge the conditions of supervised release;

(3) "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision;" or

(4) order the defendant to remain at his place of residence during nonworking hours as an alternative to incarceration.

18 U.S.C.A. § 3583(e).

    **A.   Nature and Circumstances of the Offense and History and Characteristics of Defendant**

The Court must consider, in fashioning a sentence, the nature and circumstances of the offense and the history and characteristics of a defendant. 18 U.S.C. § 3553(a)(1).

Defendant Hubbard comes before the Court at the age of 49, with some health problems of varying severity. She had a tumultuous childhood, yet she has a steady and stable history of gainful employment and volunteer work, and she recently earned a Michigan insurance license. Hubbard had no prior criminal history at the time of the original sentence. The Government acknowledges that these items typically weigh in favor of some leniency.

But Hubbard already received leniency from the Court through its sentence on the offense of conviction. At the sentencing hearing, the Court originally imposed a custodial sentence of eight months in the Bureau of Prisons to be followed by two years of supervised release. The defense objected, argued that the sentence was excessive and greater than necessary, and advocated that Hubbard be allowed to serve the custodial portion of her sentence in a halfway house or on home confinement. The Court then sustained the defendant's objection, vacated its original sentence, and sentenced Hubbard to one day, time served, to be followed by two years of supervised release, the first eight months of which were to be served in a Residential Reentry Center. Hubbard, however, took the Court's leniency for granted, and breached the Court's trust by committing this violation of her supervised release.

Hubbard once again committed an act of fraud. According to the Violation Report, Hubbard knew that she was not eligible to carry an auto insurance policy

4

because she had a suspended license. She knew that she couldn't produce the legitimate documentation to the RRC in order to keep her car on site. And instead of being honest with the administrators at the RRC, instead of asking for help, instead of resolving herself to taking public transportation or using ride sharing services until she was able to restore her license, instead following the rules and acting within legal boundaries, Hubbard chose fraud. She admittedly convinced her own son to add her vehicle to his insurance policy under the guise that it would be more cost effective to add her vehicle to his current plan. She then took the resulting certificate of insurance, copied and pasted her name on it, and presented it to the administrator at the RRC as a legitimate policy. (*See* ECF No. 27, PageID.154.)

Hubbard, with her recently earned insurance license, essentially committed insurance fraud. And she did so at the RRC – the very place at which she was supposed to rehabilitate herself, in part, by adhering to the rules. Hubbard, however, didn't passively just break the rules, she took active steps to undermine those rules and defraud the RRC. Ultimately, Hubbard took the opportunity at a second chance that the Court gave her…and squandered it.

### B.      Need to Afford Adequate Deterrence and Protect the Public

The sentence imposed must also, "afford adequate deterrence to criminal conduct and [...] protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)-(C).

The United States didn't focus on specific deterrence at the sentencing hearing on the offense of conviction.  It acknowledged that given Hubbard's lack of criminal history, any sentence imposed might be sufficient to discourage her from engaging in additional criminal conduct.  It is clear now that this factor is extremely important here.  The Court's lenient sentence did nothing to deter Hubbard from, once again, engaging in fraudulent conduct.  Accordingly, the sentence imposed for Hubbard's violation of supervised release must be sufficient to impart on Hubbard the importance of taking the Court's orders seriously, help her realize that fraudulent actions result in serious consequences, and deter any future violative conduct.

It is also important that the sentence imposed dissuade others from engaging in misconduct akin to that of the defendant and send a message that there are significant consequences for breaching the Court's trust.

### C. Effective Training and Treatment

Additionally, the sentence imposed must, "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The defendant graduated from high school, has taken some college courses, and recently earned a Michigan insurance license. Should the Court impose a custodial sentence, the Government would encourage the defendant to take advantage of any relevant educational opportunities or vocational training offered by the Bureau of Prisons.

As for the defendant's health, the government believes that the Bureau of Prisons is fully capable of treating the defendant's health issues during any term of incarceration. Additionally, the Government would encourage the Court to continue the special conditions for mental health treatment originally imposed as part of the sentence of conviction during any term of supervision.

### D. Kinds of Sentences Available and Sentencing Range

In the case of a violation of probation or supervised release, the Court must also consider the kinds of sentence and the sentencing range established by the applicable guidelines or policy statements issued by the Sentencing Commission. 18 U.S.C. § 3553(a)(4)(B).

The defendant's violation of supervised release is a Grade C violation. Pursuant to the United States Sentencing Commission's Policy Statement regarding the revocation of supervised release, "[u]pon a finding of a Grade C violation, the court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision." U.S.S.G. § 7B1.3(a)(2).

In the case of a revocation of supervised release, the applicable range of imprisonment is set forth in the Revocation Table in § 7B1.4. U.S.S.G. § 7B1.3(b). Here, the defendant's Grade C violation, combined with her Criminal History Category of I, results in a guideline range of 3 to 9 months of imprisonment. U.S.S.G. § 7B1.4. Under the applicable guideline provision, the "minimum term" of the defendant's advisory guideline range (here 3 months) may be satisfied by:

    (A) a sentence of imprisonment; or

    (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term.

U.S.S.G. § 7B1.3(c)(1). However, where, as here, the revocation is based "on a violation of a condition specifically pertaining to community confinement,

intermittent confinement, or home detention, **use of the same or a less restrictive sanction is not recommended**." U.S.S.G. § 7B1.3(c)(3) (emphasis added).

Accordingly, to the extent that the defendant is seeking a sentence of intermittent confinement in this case, the Government submits that such a result would not comply with the Guidelines or the purposes of § 3553(a). As stated above, the Court already granted the defendant leniency when it varied downward on the original sentence from eight months in the Bureau of Prisons to eight months in a Residential Reentry Center. It would be unjust to sentence the defendant to a more lenient sentence than the one originally imposed. Accordingly, a custodial sentence is warranted.

An upward departure under U.S.S.G. § 7B1.4, however, is neither warranted nor available here. Application Note 4 to § 7B1.4 provides that "[w]here the original sentence was the result of a downward departure (e.g., as a reward for substantial assistance), or a charge reduction that resulted in a sentence below the guideline range applicable to the defendant's underlying conduct, an upward departure may be warranted." U.S.S.G. § 7B1.4, Application Note 4. Here, the Court's original sentence was the result of a downward *variance*. Because the terms "departure" and "variance" are sometimes used interchangeably, the undersigned consulted with the United States Sentencing Commission regarding whether the Application Note would apply here. The guidance received is that the

9

Application Note applies to the circumstances expressly delineated therein and that it does not apply to variances.

### E. Restitution, Fines, and Forfeiture

Finally, a court must consider whether there is a need to impose restitution to any victim or victims of the defendant's offenses. 18 U.S.C. § 3553(a)(7).

The defendant's crime caused a financial loss to the government; thus, the United States sought, and the Court imposed, a mandatory restitution order under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, in the amount of $200,152.00 to the Social Security Administration and $250.00 to the United States Department of the Treasury. The Government asks that the sentence for the defendant's violation of supervised release reimpose the conditions related to compliance with the Court's order of restitution.

### IV. Conclusion

Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the United States respectfully recommends a sentence of incarceration at or near the midpoint of the applicable guideline range. The United States further asks that the Court reimpose the conditions related to the Court's order that the defendant pay restitution in the full amount of $200,402.00 ($200,152.00 to the Social Security Administration and $250.00 to the U.S. Department of the Treasury).

        Respectfully Submitted,

        DAWN N. ISON
        United States Attorney

        *s/Corinne M. Lambert*
        CORINNE M. LAMBERT
        Special Assistant U.S. Attorney
        211 W. Fort Street, Suite 2001
        Detroit, Michigan 48226
        (313) 226-9129
        Corinne.Lambert@usdoj.gov

Date:  December 23, 2024

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 23, 2024, I filed the foregoing electronically via the CM/ECF system, which will send notification of such filing to counsel of record:

Casey Swanson
613 Abbott Street, Suite 500
Detroit, Michigan 48226
(313) 463-6144
casey_swanson@fd.org

Jean Pierre Nogues
613 Abbott Street, Suite 500
Detroit, Michigan 48226
(313) 967-5840
jp_nogues@fd.org

A copy was also provided to Probation Officer Tyler Frederick via email.

                                        *s/Corinne M. Lambert*
                                        CORINNE M. LAMBERT